UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MAURICE WHITEN, ET AL. | : | CIVIL NO. 3:02CV1520 (MRK) |
| v. | : | |
| PETER J. MURPHY, ET AL. | : | OCTOBER 20, 2003 |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTION TO MOTION FOR SUMMARY JUDGMENT

### BACKGROUND

The defendants refer the Court to their Material Facts in Support of Motion for Summary Judgment.

### ARGUMENT / LACK OF MEDICAL CARE

The plaintiffs claim that they were denied necessary medical attention by the defendants. It is clear, however, from the medical records submitted by the defendants, that the plaintiffs received medical attention when they complained of flu-like symptoms. Plaintiff Whiten alleges he was "allowed" to see the doctor once, but he does not recall making any other requests to see the doctor. Plaintiffs' Motion in Opposition, Exh. 1, p.13. His records indicate he was seen several times for various ailments including flu-like symptoms in March of 2002. Nowhere in his medical records does he indicate to medical staff that he has inhaled fumes. He claims to have complained about his illness to two correctional officers, but does not remember anyone else.

Plaintiff Joslin had been seen in sick call several times in March of 2002 for sore throat, headaches and dizziness. He was treated for these ailments. He was also seen in April 2002 by a mental health nurse. See medical records of Joslin, Defendants' Motion for Summary Judgment.

Nowhere in these records does he complain of inhaling fumes. Plaintiff Joslin claims that he only signed up for sick call once because correctional officers had told him he had seen the doctor once for odor and they weren't taking anyone's complaints about it. Plaintiffs' Motion in Opposition, Ex. 2, p.13. He does not name the officers. Apparently, if true, he accepted this without filing a grievance or complaint with anyone. Warden Murphy and Commissioner Armstrong cannot be held liable for these alleged comments of correctional officers of which they had no knowledge. It is clear from the plaintiffs' medical files that medical treatment was generally available. Lacking knowledge of a lack of available treatment, the defendants cannot be liable. This would be true even if they had complained to medical staff. Furthermore, to the extent the plaintiffs claim a lack of "proper" treatment such as blood tests, there is no competent medical evidence in the record to support such a requirement based on the plaintiff's symptoms. Disagreement with the course of medical treatment does not give rise to a constitutional claim. See Corby v. Conbay, 457 F.2d 251 (2d Cir. 1972). Furthermore, prison administrators such as defendants Murphy and Armstrong properly rely on the opinions of their medical staff regarding medical issues. See McEachern v. Civiletti, 502 F.Supp. 532, 534 (N.D. Ill 1980). The plaintiffs do not provide any evidence that they made the defendants aware of any lack of medical care.

To establish an unconstitutional denial of medical care, an inmate must prove "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 291 (1976). Mere negligence will not support a Section 1983 claim. The conduct complained of must "shock the conscience" or constitute a barbarous act." McCloud v. Delaney, 677 F.Supp. 203, 232 (S.D.N.Y. 1988) (citing United States ex rel. Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970). A treating physician will be liable under the Eighth Amendment only if his conduct is

"repugnant to the conscience of mankind." Tomarkin v. Ward, 534 F.Supp. 1224, 1230 (S.D.N.Y. 1982) (quoting Estelle, 429 U.S. at 105-06).

There are both subjective and objective components to the deliberate indifference standard. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom, Foote v. Hathaway, 513 U.S. 1154, 115 S.Ct. 1108 (1995). The alleged deprivation must be "sufficiently serious" in objective terms. Wilson v. Seiter, 501 U.S. 294, 298 (1991). The term "serious medical need" contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway, supra, 37 F.3d at 66 (quoting Nance v. Kelley, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J, dissenting)). See, e.g., Hathaway v. Coughlin, 841 F.2d 48 (2d Cir. 1988) (broken pins in hip); Williams v. Vincent, 508 F.2d 541, 544 (2d Cir. 1974) (discarding inmate's ear rather than reattaching it); Martinez v. Mancusi, 443 F.2d 921, 923 (2d Cir. 1970) (refusal to follow surgeon's instruction), cert. denied, 401 U.S. 983 (1971). Not all medical conditions, however, are considered "serious." See, e.g., Jones v. Lewis, 874 F.2d 1125 (6th Cir. 1989) (mild concussion and broken jaw); Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988) (kidney stones); Malsh v. Austin, 901 F.Supp. 757 (S.D.N.Y. 1995) (delay in providing routine dental treatment); May v. Baldwin, 895 F.Supp. 1398 (D.Or. 1995) (dry skin); Glasper v. Wilson, 559 F.Supp. 12 (W.D.N.Y. 1982) (bowel problems).

Subjectively, the prison official must have acted with "a sufficiently culpable state of mind." Hathaway v. Coughlin, supra, 37 F.3d at 66. "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows and disregards an excessive risk to inmate's health or safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 1979 (1994).

There is simply no basis for holding the defendants liable for any lack of medical treatment.

**Rumor and Hearsay**

The plaintiffs claim several material facts based on apparent rumor and hearsay. Plaintiffs' Material Fact #7 claims "that many inmates had reported in sick but claimed all of them were suffering from flue [sic]." This is an alleged statement by a non-party and is hearsay. Plaintiffs' Material Fact #16 claims that correctional officers in the facility also suffered physical illness as a result of the air quality and one "had her blood tested and learned that she had carbon monoxide in her blood." Plaintiffs do not provide any medical records of such person or persons, nor any testimony under oath from either of these officers or their doctors. Even if this unnamed officer had carbon monoxide in her blood, this would not prove this was the result of her working at the Hartford facility.

**Notice**

Plaintiff Joslin claims he spoke directly with defendant Murphy about the bad air and Murphy said he was trying to fix it. Plaintiffs' Material Facts in Opposition, #17. Even if this claim is true, it does not demonstrate anything more than on one occasion during this period Murphy was aware of a problem. As can be seen by the defendants' exhibits, each occurrence was addressed.

## CONCLUSION

Defendants' Motion for Summary Judgment should be granted.

>                                   DEFENDANTS
>                                   Peter J. Murphy, et al.
>
>                                   RICHARD BLUMENTHAL
>                                   ATTORNEY GENERAL
>
>                               BY: _____
>                                   Michael J. Lanoue
>                                   Assistant Attorney General
>                                   110 Sherman Street
>                                   Hartford, CT  06105
>                                   Federal Bar #ct05195
>                                   E-Mail: michael.lanoue@po.state.ct.us
>                                   Tel: (860) 808-5450
>                                   Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 20th day of October 2003:

Timothy J. Mahoney, Esq.
Williams & Pattis, LLC
51 Elm Street, Suite 409
New Haven, CT 06510

>                                   _____
>                                   Michael J. Lanoue
>                                   Assistant Attorney General

5